Haywood; Judge,
delivered the opinion of Judge Whyte and himself. The first question is, whether Carson had a lien on the land for the purchase money. Secondly, whether it bound the land in the hands of Walker, the sub-purchaser. Thirdly, whether Eskridge has the same *85 lien that Carson had. Fourthly, whether the court can decree a sale of the lands, for satisfaction of the debt.
As to the first question, whether Carson had a lien for the land, and as to the second, whether it binds we will consider both of them at the same time.
By the established rules in England, which have been recognized and acted upon in New York, Virginia, North Carolina and Georgia, and also in this State, on a former occasion, there is such a lien raised by the law, upon the supposed intention of the parties, that it should not be in the power of the vendee to keep the lands and not pay the debt, or to transmit them to heirs or assigns, and disappoint the vendor of the price engaged to be paid for it. This presumed intention, like all other presumed matters, gives way to proof which establishes the contrary of whatis presumed; but is so strongly raised, that it cannot be displaced but by clear evidence to be adduced on the part of the vendee, which also must clearly show that the parties had a different intention. A bond, note or' covenant given by the vendee, will not amount to such evidence, but will only be deemed an additional security, like a bond accompanying a mortgage, and may be necessary to control the receipt indorsed on the deed, or admitted in the body of it. A bond by a third person for the") purchase money, or with a third person as security; or a lien agreed upon by keeping the deed of conveyance as an escrow for part of the purchase money, and an agreement when that was paid to deliver the deed, and to take bonds or negotiable paper indorsed for the residue, evince a design to release the lien for the residue. So would a mortgage upon other lands of the vendee, than those purchased of the vendor; and so might other facts which manifest that a lien was not intended by the parties.-— Some books say it must be done by an express stipulation in the deed to the vendee, stating precisely and plainly that the lands should not be subject to a lien. 15 Ves. jr. 329. These positions are supported by Sug. 388. 6 Ves. jr. 652. 1 Schoales and Lefroy 132. 1 John. Chan. Cases 309. 2 V. and Beams 306. 15 V. 329.
*86 The sub-purchaser with notice that the purchase money is unpaid, is liable to the same lien; for knowing oí the incumbrance, he had an opportunity to provide against its consequences, either by a diminution oí price, or' by a requisition of indemnity, or otherwise. More evidently is an heir bound, who succeeds into the place of his ancestor the vendee, in respect to whom, if he were not bound, the vendor in England, for want of a bond binding the heir, might wholly lose his debt, and lands also. The lien cannot be removed but by proof that it was waived by the parties, or that something else was agreed to be taken as a substitution for it.
It is argued that the law is not so in this state, because here all lands are liable to be sold for the debts of the vendee, the purchased lands as well as others; and that there is no necessity, as in England, where the heir is not bound but by a bond expressly naming him. Answer: A bond given for the purchase money, expressly binding the heir, would not in England discharge the lien; therefore the lien is not in place of such bond, or because of the want of it. The meaning of the lien is, that other creditors should not take satisfaction out of the vendor’s lands in exclusion of him, and intercept the money on its passage to him, which is in place of the land, or is the product of the land which he has sold.
It is just that he should not pay with his money the debts of the vendee. The equity of the rule is so plain and upright, that it has forced itself into the court from the earliest periods of its existence. It is equally, if not more necessary, where lands are liable to the Fi. Fa. as where they are only liable to the elegit; for in the former case, a sale of the purchased lands to satisfy other creditors of the vendee, extinguishes the expectations of the vendor forever, whereas the elegit leaves him at least a future, though perhaps distant prospect.
It is agued also, that our registration laws prevent a lien by implication, nothing under them passing but by deed registered in due time. Answer: Such also are the *87 registration laws of all the countries where the lien has been recognised.
It is objected, that a persona] security was decreed in 4 Wheaton 297, to he a relinquishment of the lien swer: The loss of the lien was occasioned in that casehy the special agreement to keep the deed to the purchaser as an escrow, till a part of the purchase money was paid, and then to deliver it and take personal security. In the present case, so far from any intention to release the lien, it is expressly stated on the face of the notes given by the vendee for the purchase money. The lands are in direct terms pledged for payment of the purchase money. The writing to be sure is not subscribed by the vendee; but being placed in the bond at the time of its execution, is as much a part of it as if it had been sealed, and is considered in law a part of the bond, which was sealed by the obligor.
From this view of the case this conclusion follows, that the lands were bound by a lien, both in the hands of the vendee,and in the hands of Walker, the latter having had notice before his sub-purchase.
The next question is, whether Eskridge has the same lien that Carson, the vendor, had.
An equitable mortgage may be transferred by the mortgagee into the hands of an assignee, as well as a legal one; and here is an equitable mortgage. One of us cannot see why, as the lien implied goes with the land to sub-purchasers with notice, it should not also pass be-beneficially from the vendor to his assignee. A mortgage will do so: why not a simple lien raised by equity for the same purpose? As the debt with the aid of a statute was assignable in equity,, why not also the only effectual security for it? Why say, you may assign the debt, but not the security? Why sever the contract into parts, disjoin-ing them, and thereby rendering ineffectual the assignment of the debt, which equity legalizes? Is it more to the prejudice of the vendee, that the land purchased should be liable to the assignee of the vendor, than to the vendor himself ? We both agree that an equitable mort *88 gage, as the writing on the face is, will pass to the as- . signee.
The remaining question is, whether we can decree a 0f the lands.
We might indeed declare, that there is a lien upon the lands, and leave Eskridge to proceed at law; but it is better to act without circuity, as that might generate more litigation; and not only to establish his right,but to give it effect, and to put a final end to disputes.
The money to be decreed should be the same sum that the vendor would be entitled to receive, had no assignment been made. How has the vendee a right to be benefited by the contract made by Eskridge, who is not using any but his own money? He is not a trustee acting for the vendee, and with his funds,nor an executor using the funds of the testator, in buying in the debts againt his testator; but he acts for himself divested of all such privily, and with his own money. There is no pretence to say, that the advantage gained by the contract should be for the benefit of the vendee, more than any other person in the world. Nor can it be supposed that he ought, whether he will or not, after advancing his money, with which he purchased his note, to be converted into a lender of the same to the vendee, to whom he is an utter stranger, and to receive back payment from him the same sum that he gave to Carson, after the loss of much time, and after much litigation and expense.
Decree: that Eskridge shall recover the principal and interest due upon the note, to be ascertained and report-edby the Master; and that if the principal, interest and costs be not paid before the expiration of five months from the last day of the present term of the court, that the land shall be sold for satisfaction of said principal, interest and costs.